IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NICOLE TYNES | * | |
| Plaintiff | * | |
| v. | * | |
| CITY OF BALTIMORE, MARYLAND; CITY OF BALTIMORE FIRE DEPARTMENT; BOARD OF FIRE COMMISSIONERS OF THE BALTIMORE CITY FIRE DEPARTMENT; BALTIMORE CITY COUNCIL; BRANDON M. SCOTT, IN HIS OFFICIAL CAPACITY AS MAYOR OF BALTIMORE CITY, MARYLAND | * * * * * | Case No. 1:22-cv-1452 |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

COMES NOW Plaintiff, Nicole Tynes by her undersigned counsel brings this action against the City of Baltimore, the City of Baltimore Fire Department, the Board of Fire Commissioners of the Baltimore City Fire Department, Mayor Brandon M. Scott, and the Baltimore City Council, (together the "Defendants") for discrimination against Plaintiff because of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII") and states as follows:

1

## JURIDICTION AND VENUE

1. This Court has jurisdiction over the action under 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Section 1345.

2. This Court has authority to grant equitable relief and monetary damages under 42 U.S.C. Section 2000e-5(g).

3. Venue is proper in this District under 28 U.S.C. Section 1391

## PARTIES

4. Plaintiff is Nicole Tynes, an African American female formerly employed as a paramedic by the City of Baltimore Fire Department.

5. Defendant Baltimore City (the "City") is a city within the meaning of 42 U.S.C. Section 5302(a)(5), a person within the meaning of 42 U.S.C. Section 2000e(a), and an employer within the meaning of 42 U.S.C. Section 2000e(b).

6. Defendant Baltimore City Fire Department (the "Department") is an agency of the City.

7. The Department is a person within the meaning of 42 U.S.C. Section 2000e(a), and an employer within the meaning of 42 U.S.C. Section 2000e(b). Pursuant to Federal Rule of Civil Procedure 19, the Department is joined as a party whose presence in this action may be necessary to afford complete relief.

8. Defendant Baltimore City Council (the "Council") is a political subdivision of Baltimore City, Maryland, and is vested with legislative power over the City.

Pursuant to Federal Rule of Civil Procedure 19, the Council is joined as a party whose presence in this action may be necessary to afford complete relief.

9. Defendant Board of Fire Commissioners (the "Board") is a five-member body comprised of five persons appointed by the Mayor of Baltimore and created pursuant to the charger, laws, and regulations of the City of Baltimore. Pursuant to Federal Rule of Civil Procedure 19, the Board is joined as a party whose presence in this action may be necessary to afford complete relief.

10. Defendant Brandon M. Scott is the Mayor of Baltimore City, Maryland. Pursuant to Federal Rule of Civil Procedure 19, the Mayor is joined as a party whose presence in this action may be necessary to afford complete relief.

## FACTS

11. Plaintiff began employment with the Department on or about August 20, 2014.

12. Plaintiff's most recent position was as a paramedic with the Department.

13. On April 22, 2016, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Battalion Chief Theresa Harp ("Harp") in her official capacity as a Battalion Chief for the Department because of discrimination on the basis of race and retaliation. In that charge Plaintiff alleged:

    a. That Plaintiff was subjected to bullying, harassment, and threats of insubordination by Lieutenant Christian Donley ("Donley") and Harp;

   b. That Harp illegally seized and kept Plaintiff's personnel file as an act of retaliation;

   c. That Plaintiff was reassigned a partner, Paramedic James Morrow ("Morrow") and that she learned that Morrow was assigned to her to spy on her as an act of harassment, creating a hostile work environment; and

   d. That Defendants assigned another Paramedic, Amber Wilson ("Wilson") to spy on Plaintiff as an act of harassment, creating a hostile work environment.

14. On July 25, 2016, Plaintiff was transferred from Medic 12 to Medic 22 without any legitimate reason being provided.

15. On March 3, 2017, Plaintiff was injured on the job and on March 7, 2017, she was transferred to the Fire Marshal's Office under the command and supervision on Commander Derrick Ready ("Ready").

16. Between March 7, 2017, and April 30, 2018, while Plaintiff was not under the supervision of Harp or Donley, she had no incidents or discipline.

17. On April 30, 2018, Plaintiff sought to file a return to duty slip at the Department Headquarter but was informed that Harp required her to travel to a specific fire house and file the document there.

18. On May 8, 2018, Emergency Medical Technicians Norman Wheeler ("Wheeler") called Plaintiff and warned her that she was being set up by Acting Lieutenant

Maria Murray ("Murray") and that there were ongoing discussions about Plaintiff behind Plaintiff's back.

19. In May 2018, Plaintiff was subjected to a hostile work environment by Paramedic Laura Woolfson ("Woolfson") who made false accusations against Plaintiff.

20. On May 21, 2018, Plaintiff filed a complaint with the Department requesting additional training and alleging a hostile work environment caused by Woolfson. This complaint resulted in a special report, authored by Murray, addressed to Chief of Fire Department Niles Ford ("Ford").

21. On May 24, 2018, Harp filed a complaint against the Plaintiff accusing Plaintiff of making false statements, based on Plaintiff's May 21, 2018, complaint, and in it referencing Plaintiff's allegations against Harp in the April 22, 2016, EEOC charge.

22. On July 6, 2018, Plaintiff filed a charge of retaliation against the Department with the Baltimore City Community Relations Committee ("CCR")(the "Charge"). This charge was automatically filed with the EEOC under a work-sharing agreement between CCR and the EEOC.

23. In the Charge, Plaintiff alleged that Harp, acting in her official capacity for the Department and the City had retaliated against Plaintiff for engaging in a protected activity on March 22, 2016.

24. In the Charge, Plaintiff alleged that Harp had brought a formal complaint against Plaintiff for "making false statements."

25. On January 14, 2019, Plaintiff was notified by the City of an administrative hearing to be held concerning Harp's complaint.

26. On January 23, 2019, the administrative hearing was held.

27. On or February 26, 2019, based on Harp's formal complaint against the Plaintiff, Plaintiff was subject to discipline by the City and Department and punished with a seventeen (17) day suspension with loss of pay and eleven (11) points were added to the Plaintiff's disciplinary history in Plaintiff's personnel file.

28. On March 28, 2019, Plaintiff filed a grievance (Grievance #2-734-2019), with the Union's assistance, against the Department.

29. On January 28, 2020, Plaintiff attended the hearing for her March 28, 2019 grievance.

30. On February 5, 2020, Plaintiff and Department entered into a settlement agreement whereby the Department agreed to reimburse Plaintiff seventeen (17) days suspension (204 hours) and to remove the disciplinary points added to Plaintiff's personnel file.

31. Plaintiff holds a Fire Inspector III certification.

32. A Fire Inspector III certification is the highest certification level attainable by a Fire Inspector.

33. Plaintiff had previously worked for the Office of Fire Marshal in 2017 where she was recognized for her work by Chief Theresa Everett ("Everette").

34. On June 29, 2020, Plaintiff received notice from the Departments Human Resources ("HR") department that Plaintiff was eligible for a Fire Inspector I position (the "Position") with the Office of the Fire Marshal.

35. On June 16, 2020, Plaintiff was interviewed for the Position along with 14 other candidates.

36. All candidates interviewing for the Position were awarded a subjective score by HR.

37. This score was based on the interviewer's subjective assessment of the interviewee's performance in the interview.

38. No explanation or objective metrics were provided for the scoring criteria.

39. On August 7, 2020, Plaintiff was informed, by circular, that she had ranked 12th of the 14 candidates and that she was not selected for the Position.

40. Two other candidates, Ms. Shonnie Thorpe and Ms. Yolanda Dioses were selected for the Position. Ms. Thorpe ranked 1st and Ms. Dioses ranked 7th in the interviewer's scoring system. To the best of Plaintiff's knowledge neither Ms. Thorpe nor Ms. Dioses had pending EEOC complaints at the time of their selection.

41. To the best of Plaintiff's knowledge, Thorpe held only a Fire Inspector I certification and Dioses did not hold any level of certification at the time of her application, hence neither candidate was as qualified as Plaintiff for the Position.

42. On October 29, 2020, Plaintiff amended the July 6th, 2018, charge of retaliation with the EEOC to include the subjective selection of less qualified candidates for the Position because of retaliation.

43. On or around January 12, 2021, Plaintiff was taken off duty for suffering abdominal pain.

44. On February 8t, 2021, Plaintiff underwent surgery, a partial hysterectomy, performed by Dr. Dwight Im ("Dr. Im").

45. On July 29, 2021, Dr Im cleared Plaintiff to return to work at the Department with no restrictions.

46. On August 2, 2021, Plaintiff had a PSI appointment with Dr. Peter Lee ("Dr. Lee") and was ordered to have a Functional Capacity Evaluation ("FCE").

47. On August 16, 2021, Plaintiff had a FCE.

48. The FCE was improper in that the FCE administered to Plaintiff was specifically designed for fire-fighters not paramedics.

49. At the FCE, Plaintiff was assaulted by the evaluator, which she reported to PSI on August 24, 2021.

50. The FCE cleared Plaintiff to return to full duty.

51. On August 31, 2021, Plaintiff was returned to full duty.

52. On September 1, 2021, Plaintiff was informed by Department Instructor Vera Chapman ("Ms. Chapman") that Plaintiff would need to complete a Return to Duty Evaluation (the "Evaluation") and protocol testing.

53. Plaintiff failed the Evaluation due to stress caused by the events of the PSI ordered FCE. She was informed by Department Captain Jennifer Triaca ("Captain Triaca") that she would not be permitted to retake the Evaluation.

54. Captain Triaca informed Plaintiff that she needed to go back to PSI for evaluation and threatened Plaintiff with insubordination.

55. On September 1, 2021, Nurse Practitioner Mary Lou Gercke ("Ms. Gercke") placed Plaintiff on "off duty" status for a non-line of duty ("NLOD") medical issue. Ms. Gercke informed Plaintiff that Plaintiff would remain off duty until Plaintiff could speak with a counselor despite Plaintiffs assertions that she was suffering from test anxiety only and able to retake the test.

56. Plaintiff informed Ms. Gercke that Plaintiff was ready, willing, and able to retake the test and return to full duty.

57. Ms. Gercke scheduled Plaintiff for a follow up appointment on September 15, 2021, which Gercke knew, or reasonably should have known, to be after Plaintiff's medial leave had expired.

58. On September 1, 2021, Lieutenant Chip Jones ("Jones") informed Plaintiff that if she attended the September 15, 2021, appointment she would retain her position. He then ordered her to sign a PSI document confirming that Plaintiff was being removed from duty until the September 15, 2021, appointment.

59. On September 2, 2021, the Department sent Plaintiff "expiration of medical leave" paperwork via email.

9

60. On September 3, 2021, Plaintiff filed a Special Report requesting the use of accrued leave for Catastrophic Leave, as allowed by Department Policy (Article 31(c) of the Baltimore Fire Firefighter Local 734 Memorandum of Understanding), to extend her termination date due to the previously scheduled PSI appointment, scheduled by Ms. Gercke to be on September 18, 2021.

61. The Plaintiff's Catastrophic Leave was approved.

62. On September 3, 2021, Plaintiff submitted Dr. Im's clearance to return to duty at the advice and counsel of union president Richard Langford ("Langford").

63. Dr. Im contacted PSI with Plaintiff's express permission and in Plaintiff's presence but was informed by PSI that they (PSA Staff) could not discuss Patients records due to HIPPA concerns.

64. The Department and PSI contend that Plaintiff's removal from duty and subsequent discharge were for other medical reasons that they have refused to disclose to either the Plaintiff or her doctors.

65. The Department terminated Plaintiff's employment on September 8th, 2021.

66. On September 8 and September 9, 2021, Plaintiff contacted Ms. Beth McNeal ("Ms. McNeal") and Ms. Brandi Richmond ("Ms. Richmond"), both of whom worked for HR.

67. Ms. Richmond told Plaintiff that she was placing Plaintiff on administrative leave in lieu of discharge.

68. Department scheduling system, "Workday," reflected that Plaintiff was on "permission leave" on September 9, 2021, and Department time management system, "Kronos," reflected that Plaintiff was on "administrative leave" on September 9, 2021.

69. Ms. Richmond recommended that Plaintiff fill out Americans with Disabilities Act ("ADA") paperwork. Plaintiff did not qualify as disabled under the ADA, which Ms. Richmond knew or reasonably should have known.

70. On September 10, 2021, Plaintiff contacted Ms. Tracey Williams ("Ms. Williams") a supervisor for the Baltimore City Police and Fire Department Pension Department. Ms. Williams informed Plaintiff that she was unable to find the expiration of medical leave documents.

71. On September 10, 2021, Ms. McNeal informed Plaintiff that Plaintiff's job would be restored if she attended the PSI evaluation on September 15, 2021.

72. Ms. Gercke had scheduled the appointment for September 15th, 2021.

73. On September 15, 2021, Plaintiff appeared in person for her scheduled PSI evaluation.

74. At the evaluation Plaintiff was informed by PSI receptionist Natalie Hall ("Ms. Hall") that Plaintiff's scheduled appointment had "disappeared" and advised Plaintiff that it was likely that the Department had cancelled the appointment.

75. Ms. Gercke met Plaintiff in the reception area of PSA on September 15, 2021, and informed Plaintiff that since Plaintiff had been discharged by the Department already, Plaintiff no longer had an appointment with PSI.

76. On September 13, 2021, Plaintiff received a posted general order from the Department reiterating that she had been discharged.

77. The Department discharged Plaintiff on unspecified grounds absent any medical or disciplinary reason for discharge while Plaintiff was still engaged in a protected activity.

78. On October 4, 2021, Plaintiff amended the July 6, 2018, charge of retaliation a second time ("Second Amended Charge").

79. In the Second Amended Charge Plaintiff charged that Defendant's discharged her because of retaliation for engaging in protected activity from 2018 on.

80. On March 18, 2022, having adopted the findings of the CCR which found no probable cause of discrimination, the EEOC issued Plaintiff a Right to Sue Letter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

81. Grant judgement in favor of Plaintiff and declare that the Defendants have violated Title VII of the Civil Rights Act of 1964, and its accompanying regulations.

82. Award compensatory and punitive damages to Plaintiff for damages incurred as a result of the discrimination and retaliation against her as alleged in this complaint and pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

83. Award Plaintiff reasonable attorney's fees.

Plaintiff prays for such additional relief as justice may require, together with her costs and disbursements in this action.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 24 U.S.C. Section 1981a.

Dated: 6/14/2022                              Respectfully Submitted,

/s/ Donald Quinn
Donald Quinn, Fed. Bar No. 22324
820 Ritchie Highway, Suite 265
Severna Park, Maryland 21146
(443)455-1967
donquinn@thequinnlawgroup.com
*Attorney for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2022, a copy of the foregoing Complaint was served via first-class mail, postage paid upon:

James L. Shea, Esq.
City Solicitor
Baltimore City Law Department
City Hall, Room 101
100 N. Holliday Street
Baltimore, MD 21202
*Attorneys for the Defendant*

                                           /s/ Donald Quinn
                                           Donald Quinn