IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE TYNES,
    *Plaintiff*,

    v.

MAYOR AND CITY COUNCIL OF
BALTIMORE,
    *Defendant*.

Civil No. 1:22-cv-01452-ELH

**MEMORANDUM OPINION**

Plaintiff Nicole Tynes, an "African American female," was employed as a paramedic by the Baltimore City Fire Department ("BFD" or "Department"). ECF 9, ¶¶ 4, 7. Her employment began on August 20, 2014, and she was terminated on September 8, 2021. *Id.* ¶¶ 6, 60.

On June 14, 2022, as a result of plaintiff's termination, Tynes filed an employment discrimination suit against the Mayor and City Council of Baltimore (the "City"). ECF 1. The First Amended Complaint followed. ECF 9 ("Amended Complaint"). It contains two counts. In particular, Count I asserts a claim for retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Count II asserts a claim for discrimination on the basis of disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*[1]

The City has moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 11.

---

[1] Curiously, in the introductory paragraph of ECF 9, plaintiff asserts only that suit is brought under Title VII. She does not reference the ADA. Moreover, in the "Prayer for Relief," ECF 9 at 14, plaintiff references Title VII, and seeks damages under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, but she does not mention the ADA. Count II, titled "Discrimination on the Basis of Disability," makes one reference to the "Americans with Disabilities Act." ECF 9, ¶ 84.

The motion is supported by a memorandum (ECF 15) (collectively, the "Motion") and several exhibits. ECF 11-3 to ECF 11-19.[2]  Plaintiff opposes the Motion (ECF 16, the "Opposition"), supported by numerous exhibits. ECF 16-3 to 16-9. Defendant has replied.  ECF 19 (the "Reply").[3]

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I. Factual and Procedural Background[4]

Plaintiff commenced employment with the BFD on August 20, 2014.  ECF 9, ¶ 6.  On April 18, 2016, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  *See* ECF 11-3. Then, on April 22, 2016, she filed a nearly identical charge with the Maryland Commission on Civil Rights ("MCCR").  *See* ECF 11-5.  I shall refer to both submissions collectively as the "2016 Charge."[5] The 2016 Charge was filed against Battalion Chief

---

[2] Defendant submitted a memorandum with its motion. *See* ECF 11-1. Two days later, defendant filed a corrected memorandum of law. *See* ECF 15.

[3] Defendant moved to dismiss the original Complaint.  *See* ECF 6. However, the original Complaint (ECF 1) was superseded by the Amended Complaint.  ECF 9.  This is because "'an amended pleading ordinarily supersedes the original [pleading] and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir.2001) (citation omitted); *see Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). Because the Amended Complaint supersedes the Complaint, I shall deny ECF 6, as moot.  *See Freckleton v. Target Corp.*, 81 F. Supp. 3d 473, 479–80 (D. Md. 2015).

[4] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

[5] Plaintiff states that she filed her Charge with the EEOC on April 22, 2016.  ECF 9, ¶ 8. However, the 2016 EEOC Charge is dated April 18, 2022. ECF 11-3 at 1. Both ECF 11-3 and ECF 11-5 allege discrimination on the basis of race and retaliation. However, the 2016 MCCR Charge contains more detail.  *See* ECF 11-5 at 2-3.

Theresa Harp, in her official capacity, alleging "discrimination on the basis of race and retaliation." ECF 9, ¶ 8; *see also* ECF 11-3; ECF 11-5.

In the 2016 Charge, plaintiff claimed that on February 16, 2016, she was subjected, *inter alia*, to bullying, harassment, and threats of insubordination by Lieutenant Christian Donley and Harp, both of whom are Caucasian. ECF 9, ¶ 8. Further, plaintiff stated that she made "a formal complaint" to the "EEO office" of the BFD on March 2, 2016, and thereafter was subjected to "on-going harassment and a hostile work environment . . . ." ECF 11-5 at 2. In the Amended Complaint, plaintiff claims that the 2016 Charge also alleged that "Harp illegally seized and kept [her] personnel file as an act of retaliation," and that two paramedics were assigned as her partners, in order "to spy on her," creating a hostile work environment. ECF 9, ¶ 8. However, the text of the 2016 Charge does not mention that plaintiff's partners spied on her or that her personnel file was seized.

The MCCR issued a "Written Finding" on November 29, 2016. *See* ECF 11-6. It found "no probable cause" as to plaintiff's claims of race discrimination and retaliation. *Id.* at 6. And, on February 6, 2017, the EEOC adopted the MCCR's findings and issued a "Dismissal And Notice of Rights." *See* ECF 11-4. However, Tynes did not initiate a lawsuit within the requisite 90 days.

Tynes was injured on the job on March 3, 2017. ECF 9, ¶ 10; *see* ECF 11-7; ECF 16-4. A few days later, on March 7, 2017, she was transferred to the Fire Marshal's Office, under the supervision of Commander Derrick Ready. ECF 9, ¶ 10.[6] Tynes claims that she had no incidents or discipline while stationed at the Fire Marshal's Office between March 7, 2017 and April 30, 2018. *Id.* ¶ 11. During her tenure at the Fire Marshal's Office, Tynes was not supervised by Harp

---

[6] Tynes does not indicate the reason for the transfer.

3

or Donley. ECF 9, ¶ 11. And, in 2017, Tynes was recognized for her work by Chief Theresa Everett. *Id.* ¶ 28.

However, during the time that plaintiff was assigned to the Fire Marshal's Office, she was on medical leave. In her 2018 Charge (ECF 11-7; ECF 16-4), discussed *infra*, Tynes states: "From March 20, 2017 to April 30, 2018 I was out on medical leave due to a work related injury to my right arm."

Tynes "sought to file a return to duty slip" at BFD's headquarters on April 30, 2018. ECF 9, ¶ 12. But, she complains that Harp required her to file her slip at a specific fire station. *Id.* And, Emergency Medical Technician Normal Wheeler contacted plaintiff on May 8, 2018, and told her "that she was being set up by Acting Lieutenant Maria Murray. . . ." *Id.* ¶ 13.

In May of 2018, Tynes filed a request with the BDF for additional training. *Id.* ¶ 15. She also claimed that Paramedic Laura Woolfson "created a hostile working environment" and "made false accusations" against her. *Id.* ¶ 14

Tynes filed an internal complaint with the BFD on or about May 22, 2018. ECF 16-9 at 14-16.[7] She complained that Woolfson "was disrespectful," *id.* at 14;, lied to "EMS 1" by saying that Tynes "'did nothing on [a] call,'" *id.* at 15; and "attacked" Tynes's medical knowledge. *Id.* at 16.[8] Tynes also stated that she "felt trapped between Chief Harp and Woolfson." *Id.* at 16. As a result, Murray prepared "a special report" for Niles Ford, Chief of the BFD. ECF 9, ¶ 15.

On May 24, 2018, Harp filed an internal complaint with the Department, accusing Tynes of making false statements in her complaint of May 21, 2018. *Id.* ¶ 16. According to Tynes, Harp

---

[7] In the Amended Complaint, Tynes states that her internal complaint was submitted on May 21, 2018. ECF 9, ¶ 15. But, the internal complaint is dated May 22, 2018. ECF 16-9 at 15.

[8] "EMS 1" is not defined by either party.

referenced "Plaintiff's allegations against Harp in the April 22, 2016, EEOC charge." ECF 9, ¶ 16; *see* ECF 16-7 (Harp Complaint). Indeed, Harp stated that Tynes's complaint of May 21, 2018, was in "retaliation for her previous complaint being dismissed and exposed as false." ECF 16-7 at 4.

Plaintiff filed a "Charge of Discrimination" with the Baltimore Community Relations Commission ("BCRC") on July 6, 2018.  ECF 9, ¶ 17; ECF 11-7 (the "2018 Charge").  It was "automatically filed" with the EEOC.  ECF 9, ¶ 17.  Tynes alleged that Harp's complaint against her was in retaliation for plaintiff's previous "protected activity on March 22, 2016."  *Id.* ¶¶ 17-19; *see* ECF 11-7.

An administrative hearing as to Harp's complaint was held on January 23, 2019. ECF 9, ¶ 21. Then, on February 26, 2019, based on Harp's complaint, Tynes was "punished" with a seventeen-day unpaid suspension, and eleven disciplinary points were added to her record. *Id.* ¶ 22.

With the assistance of her union, Tynes filed a grievance against the BFD on March 28, 2019. *Id.* ¶ 23.  A hearing was held on January 28, 2020.  *Id.* ¶ 24.  And, on February 5, 2020, Tynes and the BFD entered a settlement agreement by which Tynes was reimbursed for her seventeen-day suspension, and her disciplinary points were removed. *Id.* ¶ 25.

On or about June 29, 2020, Tynes was informed that she was eligible for a Fire Inspector position with the Office of the Fire Marshal.  *Id.*  ¶ 29.  She subsequently interviewed for the position. *Id.* ¶ 30.[9] Out of fifteen candidates (*id.*), Tynes ranked 12th.  *Id.* ¶ 34.[10] But, she claims

---

[9] The Amended Complaint states that Tynes was notified of the position on June 29, 2020, and interviewed for it on June 16, 2020.  ECF 9, ¶¶ 29, 30.  Obviously, there is an error in one of the dates, because plaintiff would not have interviewed for the job before she learned of it.

[10] The Amended Complaint (ECF 9) states in ¶ 30 that there were fifteen candidates.  Yet, ¶ 34 of ECF 9 indicates that there were fourteen candidates.

that the assessment was subjective.  ECF 9, ¶ 32.  And, no explanation was provided as to "scoring criteria." *Id.* ¶ 33.

Shonnie Thorpe and Yolanda Dioses ranked first and seventh, respectively, and they were hired for the position. *Id.* ¶ 35.  But, plaintiff notes that she holds a Fire Inspector III Certification, which is the highest certification that is attainable.  *Id.* ¶¶ 26, 27.  She also states that she had a higher Fire Inspector Certification than the two people who were hired.  *Id.* ¶ 36.  However, the two persons who were selected did not have a pending EEOC Charge. *Id.* ¶ 35.

On October 29, 2020, Tynes amended her 2018 Charge ("First Amended Charge"). *Id.* ¶ 37; *see* ECF 11-8.  She added an additional claim for "the subjective selection of less qualified candidates for the Position because of retaliation."  ECF 9, ¶ 37.

On or about January 12, 2021, Tynes was "off duty for suffering abdominal pain." *Id.* ¶ 38.[11] She underwent a "partial hysterectomy" on February 8, 2021, performed by Dr. Dwight Im. *Id.* ¶ 39.  On July 29, 2021, Dr. Im cleared Tynes to return to work, with no restrictions. *Id.* ¶ 40.[12]

Plaintiff had an appointment with Dr. Peter Lee at Mercy Business and Employee Health Services ("PSI") on August 2, 2021.  *Id.* ¶ 41.[13]  She was "ordered to have a Functional Capacity Evaluation ("FCE")."  *Id.* Plaintiff "had a FCE" on August 16, 2021.  *Id.* ¶ 42. According to Tynes, the FCE was "improper", as it was "specifically designed for fire-fighters not paramedics."  *Id.* ¶ 43. Moreover, Tynes claims that she was assaulted by the FCE evaluator, and she reported the

---

[11]  Paragraph 38 of the Amended Complaint actually appears as follows, in part: "was ~~taken~~ off duty." ECF 9, ¶ 38. Thus, it is unclear whether Tynes chose to be off duty, or whether the BFD took her off duty.

[12]  Dwight Im, M.D. is a gynecologist at Mercy Medical Center in Baltimore.

[13]  Plaintiff does not identify that acronym of "PSI" in the suit. However, defendant notes that Mercy Business and Employee Health Services is the public safety infirmary, i.e., the "PSI." ECF 15 at 7 n. 1.

incident to PSI on August 24, 2021. ECF 9, ¶ 44. The FCE cleared plaintiff "to return to full duty," *id.* ¶ 45, and she did so on August 31, 2021. *Id.* ¶ 46.

On September 1, 2021, plaintiff was informed by Department Instructor Vera Chapman that she needed to complete a Return to Duty Evaluation ("Evaluation") and protocol testing. *Id.* ¶ 47. "Plaintiff failed the Evaluation due to stress caused by" the FCE. *Id.* ¶ 48. Department Captain Jennifer Triaca informed Tynes that needed to return to PSI for the Evaluation. *Id.* ¶ 49.[14] Triaca also threatened Tynes with insubordination. *Id.*

Nurse Practitioner Mary Lou Gercke placed plaintiff on "'off duty' status" on September 1, 2021, for a non-line of duty medical issue related to Tynes's "anxiety over the work-ordered evaluation." *Id.* ¶ 50. But, plaintiff explained "that she was suffering from test anxiety only," *id.* ¶ 50, and was "able to retake the test . . . ." *Id.* ¶ 51. Gercke scheduled "a follow-up appointment" for plaintiff for September 15, 2021, which she knew was after Tynes's medical leave was set to expire. *Id.* ¶ 52.

Also on September 1, 2021, Lieutenant Chip Jones told plaintiff that if she attended the appointment of September 15, 2021, "she would retain her position." *Id.* ¶ 53. Jones then "ordered" Tynes to "sign a PSI document confirming that Plaintiff was being removed from duty until the September 15, 2021, appointment." *Id.*

The BFD sent Tynes "'expiration of medical leave' paperwork via email" on September 2, 2021. *Id.* ¶ 54. In addition, her disability status was "updated to 'permanent,'" and she was notified to "begin the interactive process of seeking reasonable accommodations." *Id.* The letter

---

[14] The suit is inconsistent, in that ¶ 48 states that Triaca said plaintiff "would not be permitted to retake the Evaluation," while ¶ 49 states that Tricia told plaintiff "she needed to go back to PSI for evaluation . . . ." ECF 9.

also said, ECF 9, ¶ 54: "'Failure to do so [file for reasonable accommodations] will cause serious interruptions to your income.'" (alterations in ECF 9).

On September 3, 2021, Tynes submitted Dr. Im's clearance for her to return to duty. *Id.* ¶ 57. With Tynes's permission, Dr. Im contacted PSI, but was told by PSI staff that they could not speak to him "due to HIPAA concerns." *Id.* ¶ 58.

Also on September 3, 2021, plaintiff requested the use of "accrued leave" for "Catastrophic Leave," consistent with BFD policy, in order to "extend her termination date" due to the PSI appointment on September 18, 2021. *Id.* ¶ 55.[15]  The "Catastrophic Leave" was approved.  *Id.* ¶ 56.

Tynes was terminated on September 8, 2021.  *Id.* ¶ 60.  Tynes notes that the BFD and PSI "contend" that she was removed from duty and discharged for "other medical reasons," but they have "refused to disclose" the reasons to her. *Id.* ¶ 59.

Plaintiff contacted Beth McNeal and Brandi Richmond, Baltimore City Fire Department Human Resources ("HR") personnel, on September 8 and September 9, 2021. *Id.* ¶ 61. Richmond told Tynes that she was placing Tynes on administrative leave, "in lieu of discharge." *Id.* ¶ 62. On September 9, 2021, the BFD's scheduling system, "'Workday,'" reflected that Tynes was on "'permission leave," and the time management system, "'Kronos,'" reflected that she was on "'administrative leave.'" *Id.* ¶ 63.

Richmond also recommended that Tynes complete ADA paperwork.  *Id.* ¶ 64.  But, Tynes claims that she did not qualify as disabled, as Richmond knew. *Id.*

---

[15] Plaintiff alleges that the pending PSI appointment was scheduled for September 15, 2021. ECF 9, ¶¶ 53, 67. However, plaintiff also states that the appointment was scheduled for September 18, 2021. *Id.* ¶ 55. Further, plaintiff states that the leave was approved (*id.* ¶ 56), but she also states that it was not approved. *Id.* ¶ 80.

McNeal informed plaintiff on September 10, 2021, that her "job would be restored if she attended the PSI evaluation on September 15, 2021." ECF 9, ¶ 66.  On September 13, 2021, however, plaintiff received a "general order" from the BFD "reiterating that she had been discharged." *Id.* ¶ 71.  But, the grounds were "unspecified," and the order was "absent any medical or disciplinary reason." *Id.* ¶ 72.

Also on September 10, 2021, Tynes contacted Tracey Williams, a supervisor for the "Baltimore City Police and Fire Department Pension Department." *Id.* ¶ 65. Williams told Tynes that she was unable to locate the expiration of medical leave documents. *Id.*

In any event, Tynes appeared for her PSI appointment on September 15, 2021. *Id.* ¶ 68. She was informed by a receptionist that the "appointment had 'disappeared'" and that it had probably been "cancelled" by the Department. *Id.* ¶ 69.  Then, plaintiff met Ms. Gercke in the reception area, and she confirmed that the appointment was cancelled due to plaintiff's discharge. *Id.* ¶ 70.

On October 4, 2021, Tynes Amended her 2018 Charge of July 6, 2018, for the second time ("Second Amended Charge").  ECF 11-9; ECF 9, ¶ 73. She reported that she had been terminated in retaliation "for engaging in protected activity from 2018 on." *Id.* ¶ 74.  Unless otherwise noted, I shall generally refer to the initial 2018 Charge and the two amendments collectively, as the "2018 Charge."

On December 10, 2021, the BCRC issued a comprehensive determination, finding no probable cause as to the claim of discrimination. *Id.* ¶ 75; *see* ECF 11-10. The EEOC adopted the BCRC's findings on March 18, 2022, dismissed Tynes's case, and issued a Notice of the Right to Sue. ECF 9, ¶ 75; *see* ECF 11-11. The suit followed on June 14, 2022. ECF 1.

Additional facts are included, *infra*.

## II.  Standards of Review

### A.  Fed. R. Civ. P. 12(b)(1)

Defendant contends that claims beyond those contained in the 2018 Charge, as amended, are "procedurally barred." ECF 15 at 5.  The City also maintains that the Court lacks subject matter jurisdiction as to them.  *Id.*

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Const., Inc*., 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty*., 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999).   A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *accord Hutton v. Nat'l Bd. of Exam'rs Inc*., 892 F.3d 613, 620-21 (4th Cir. 2018).  A court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *B.F. Perkins*, 166 F.3d at 647 (citation omitted).

Here, defendant raises a facial challenge to the Court's subject matter jurisdiction as to both counts, asserting that certain allegations in support of the counts are procedurally barred.  In such a case, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7; *see Kerns*, 585 F.3d at 192 (noting that in a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction").

**B. Fed. R. Civ. P. 56**

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, a motion for summary judgment under Rule 56. *See* ECF 11. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc*., 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give

notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-449; *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Md. Dep't of Trans.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons,

it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc*., 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery

in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id*. at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).

Curiously, plaintiff has not filed an affidavit under Rule 56(d).  Nevertheless, plaintiff opposes the consideration of the Motion as one for summary judgment.  ECF 16 at 1, 3.

In my view, given that no discovery has taken place, it is not appropriate to construe the Motion as one for summary judgment. Plaintiff's claims implicate questions of intent and motive, and the defendant may be in control of at least some of the relevant facts. *See Tate v. Parks*, 791 F. App'x 387, 392 (4th Cir. 2019) ("[A]llowing a party enough time for discovery before summary judgment is particularly important when the other party has exclusive control of the relevant facts and when the case presents questions about intent and motive.") (internal citation omitted). Moreover, as the Court said in *McCray v. Md. Dep't of Trans.*, 741 F.3d 480, 483 (4th Cir. 2014), "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

Therefore, I shall construe the Motion as one to dismiss.  This implicates Rule 12(b)(6).

### C.  Fed. R. Civ. P. 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable*

*Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

To resolve a Rule 12(b)(6) motion, the question for the court is whether the plaintiff has stated a plausible claim for relief. *Twombly*, 550 U.S. at 570. With regard to a discrimination claim under Title VII, a plaintiff is not required to plead a prima facie case of discrimination. *McCleary-Evans v. Md. Dep't of Transportation*, 780 F.3d 582, 584-85 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016); *see Felder v. MGM National Harbor, LLC*, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (per curiam). "Instead, a plaintiff must allege sufficient facts 'to satisfy the elements of a cause of action created by [the applicable] statute.'" *Felder*, 2022 WL 2871905, at * 1 (quoting *McCleary-Evans*, 780 F.3d at 585) (alteration in *Felder*). Therefore, to survive a motion to dismiss, a plaintiff must "plausibly allege" discriminatory conduct because of her protected status, such as race or sex. *Felder*, 2022 WL 2871905, at *1; *see* 42 U.S.C. § 2000e-2(a)(1).

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), "is an evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. at 511. Therefore, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also Laurent-Workman v. Wormuth,* 54 F.4th 201, 210 (4th Cir. 2022); *Bing*, 959 F.3d at 616; *McCleary-Evans*, 780 F.3d at 584.

However, as the Second Circuit has observed, the Supreme Court's holding in Swierkiewicz is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory

intent." *Id*. at 309. On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied*, U.S. 138 S. Ct. 558 (2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *See Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)); *see also Holloway v. Maryland*, 32 F.4th 293, 298-99 (4th Cir. 2022); *McCleary*, 780 F.3d at 584; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

In other words, at the motion to dismiss stage the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). To that end, reference to the prima facie case informs a court's evaluation of a motion to dismiss. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 314 (2015); *see also Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300-01 (N.D. Cal. 2020) ("When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case 'to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief

that is plausible on its face.'") (citation omitted). However, the Fourth Circuit has "cautioned that 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable' . . . ." *Felder*, 2022 WL 2871905, at *1 (quoting *Woods*, 855 F.3d at 652).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of her opposition briefing. *See, e.g., De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); G*lenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo N.V.*, 770 F. Supp. 1053, 1068 (1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc.*, 745 F.2d 1101 at 1107).

Moreover, at the Rule 12(b)(6) stage, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v.*

*Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); ac*cord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint as well as the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); A*nand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979, 125 S.Ct. 479, 160 L.Ed.2d 356 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."

*Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods*, 855 F.3d at 642; *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166). Further, to be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" C*hesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

"In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)). Here, both parties have submitted EEOC documents. And, multiple copies have sometimes been submitted. [16]

Based on the principles outlined above, I may consider the following documents submitted with defendant's Motion and plaintiff's Opposition, because they are referenced in or otherwise integral to the Amended Complaint and their authenticity is not disputed: the 2016 MCCR Charge (ECF 11-5; ECF 16-3; ECF 16-8 at 6-7; ECF 16-9 at 8-9); the 2016 EEOC Charge (ECF 11-3); the MCCR's Determination of the 2016 Charge (ECF 11-6; ECF 16-8 at 8; ECF 16-9 at 10); the EEOC's 2017 Dismissal and Right to Sue Notice (ECF 11-4); the 2018 Charge (ECF 11-7; ECF 16-4; ECF 16-9 at 19-20); the First Amended Charge (ECF 11-8; ECF 16-5; ECF 16-9 at 31-32);

---

[16] The parties submitted some duplicate exhibits. In addition, plaintiff submitted duplicates of the duplicates. However, I generally cite to only one version of an exhibit.

the Second Amended Charge (ECF 11-9; ECF 16-6; ECF 16-9 at 42-44); Chief Harp's 2018 Complaint against Tynes (ECF 16-7; ECF 16-9 at 17-18); BCRC's Determination of the 2018 Charge (ECF 11-10); EEOC's 2021 Dismissal and Right to Sue Notice (ECF 11-11); Tynes's May 22, 2018, internal complaint (ECF 16-9 at 14-16).

Plaintiff has submitted numerous exhibits contained within ECF 16-8 and ECF 16-9, which she titles "Redacted Exhibits from Investigator Lisa Kelly . . . . regarding the 2018 Charge . . . ." ECF 16-2.[17] I will not consider ECF 16-8 at 2-5, 9 and ECF 16-9 at 2-7, 11-13, 21-30, 33-41, 45-63 as they are not integral to the suit. For the same reason, I will not consider the following defense exhibits: Letter of 6/29/20, from Department of Human Resources to plaintiff (ECF 11-12); "Certification of Eligibles" List (ECF 11-13); Memorandum of Understanding between the City and Baltimore Fire Fighters (ECF 11-14); PSI Visitation/Disposition, dated 8/31/21 (ECF 11-15); PSI Visitation/Disposition, dated 9/1/21 (ECF 11-16);  Expiration of Medical Notification, dated 9/2/21 (ECF 11-17); Expiration of Medical Notification, dated 5/14/21 (ECF 11-18); Email chain with plaintiff and BFD's HR personnel (ECF 11-19).

### III.   Discussion

#### A.  Retaliation—Title VII (Count I)

##### 1.   Title VII Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. This

---

[17] Lisa Kelly was the BCRC investigator who approved the dismissal of Tynes's 2018 Charge. ECF 11-10 at 15.

proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision . . . ." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).

The Supreme Court has referred to discrimination based on one of the five characteristics specified above as "status-based discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351, (2013). And, "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted).

As mentioned, plaintiff need not plead a prima facie claim of discrimination under Title VII to survive a Rule 12(b)(6) motion. But, reference to the elements of a claim is helpful to assess whether she has stated a plausible claim

To state a discrimination claim under Title VII, the plaintiff generally must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman*, 626 F.3d at 190); *see Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019) (per curiam); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

Title VII also prohibits an employer from discrimination against an employee for "participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *see* 42 U.S.C. § 2000e-3; *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022). In 42 U.S.C. § 2000e-3, it states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . . because he has opposed any practice made an unlawful employment practice by this subchapter [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

24

this subchapter." *See, e.g., Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *Kitlinski v. United States Dep't of Justice*, 994 F.3d 224, 232 (4th Cir. 2021*); Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barne*s, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir.2015); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

To state a claim for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'" *Okoli v. City of Balt*., 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted); *see McIver*, 42 F.4th at 411; *Sempowich*, 19 F.4th at 653; *Roberts*, 998 F.3d at 122; *Kitlinski*, 994 F.3d at 232; *Strothers*, 895 F.3d at 327; *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Foster v. Univ of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

Title VII also provides a right of action for employees who are subjected to a hostile work environment on the basis of their membership in a protected class. To state a prima facie claim for hostile work environment under Title VII, the plaintiff must allege that there was: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . . race[, color, sex, religion, or protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Okoli*, 648 F.3d at 220).

However, before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 (1989), superseded on other grounds by 42 U.S.C. § 1981(b); *see also Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 383-384 (4th Cir. 2022); *McCray v. Md. Dep't of Trans.*, 662 F. App'x 221, 224 (4th Cir. 2016); *Bryant v. Bell Atlantic, Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, such as Maryland. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4, n.8 (D. Md. Jan. 3, 2018*); Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Moreover, "a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct 1843, 1847 (2019) (citing § 20003-5(f)(1); 29 CFR § 1601.28.) "And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Fort Bend Cty.* 139 S. Ct. at 1847 (citing § 2000e-5(f)(1)).

Nevertheless, exhaustion under Title VII is not jurisdictional. It is, instead, a "claim-processing rule [ ] that must be timely raised to come into play." *Davis*, 139 S. Ct. at 1846, 1850. Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing *Davis*).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it advances the "twin objectives" of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks, alterations, and citation omitted). It "'ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible.'" *Cowgill*, 41 F.4th at 384 (citation omitted). If an employee fails to exhaust her administrative remedies, she is generally barred from filing suit. *See, e.g., Miles*, 429 F.3d at 491; *Bryant*, 288 F.3d at 132.

The administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has stated that a "'claim will . . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 161 (4th Cir. 2018) (quoting *Chacko*, 429 F.3d at 509) (ellipsis in *Nnadozie*).

That said, an EEOC charge "'does not strictly limit a . . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that

can reasonably be expected to follow the charge of discrimination[.]'" *Miles*, 429 F.3d at 491 (citation omitted); *see Chacko*, 429 F.3d at 512. And, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Thus, a federal court may hear a claim that was not presented to the EEOC so long as it is "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Cowgill*, 2022 WL 2901043, at *10; *Stewart*, 912 F.3d at 705.

### 2.   Title VII Retaliation

In Count I, plaintiff asserts a retaliation claim under Title VII.  As indicated, Title VII protects an employee from retaliation by an employer for engaging in certain kinds of protected activity.  In 42 U.S.C. § 2000e-3, it states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[18]

Reference to the elements of a claim of retaliation is helpful. To state a claim for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a

---

[18] The Fourth Circuit made clear in *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021), that the *McDonnell Douglas* proof scheme applies to a retaliation claim. *See McDonnell Douglas,* 411 U.S. 792. Thus, "[a] plaintiff may prove that an employer took action with discriminatory or retaliatory intent through direct evidence or through the [*McDonnell Douglas*] burden-shifting framework." *Strothers,* 895 F.3d at 327.

complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'" *Okoli,* 648 F.3d at 223 (citation omitted); *see Sempowich*, 19 F.4th at 653; *Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding*, 699 F. App'x at 151; *Foster*, 787 F.3d at 250; *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

As to the first element, the Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Id.* at 406; *see Netter,* 908 F.3d at 937. "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a).

"Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. So, "[t]o fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981) (citation omitted). However, "for an employee's activity to constitute protected 'opposition,' she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, and (2) that her conduct in opposition was reasonable." *Netter*, 908 F.3d at 937-38.

The second element is that of an "adverse action." In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added.) In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Id.*; *see also Burlington Northern & Santa Fe Ry.*

*Co. v. White,* 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). Thus, "[t]he scope of Title VII's anti-retaliation provision . . . is broader than the anti-discrimination provision." *Strothers*, 895 F.3d at 327.

That said, "retaliatory actions do have to be 'materially adverse'—such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." *Strothers*, 895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 68). Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67; *see also Ray,* 909 F.3d at 667. In other words, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019). But, "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999).

To establish causation under Title VII, the plaintiff bears the burden of establishing that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr*, 570 U.S. at 360; *see Irani v. Palmetto Health,* 767 F. App'x 399, 421 (4th Cir. 2019) (per curiam). At trial, the plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster*, 787 F.3d at 249. This requirement

of but-for causation imposes a higher burden on plaintiffs than the mixed-motive requirement in Title VII's antidiscrimination provision. *See Foster*, 787 F.3d at 249-50.

Nevertheless, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335. Indeed, "very little evidence of a causal connection is required to establish a prima facie case of retaliation." *Roberts*, 998 F.3d at 127 (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012)); *see Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021).

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action [at the prima facie stage] 'through two routes.'" *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Service, Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)); *see CSRA*, 12 F.4th at 417. "A plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity.'" *Roberts*, 998 F.3d at 123 (citing *Johnson*, 839 F. App'x at 783-84; *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that relevant evidence may be used to establish causation)). Or, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson*, 839 F. App'x at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

In general, "temporal proximity suffices to show a causal relationship." *Sempowich*, 19 F.4th at 654. In *Strothers*, 895 F.3d at 335-36, the Court said: "An employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *See also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that

the defendant was aware of her engaging in protected activity." (citing *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653 (4th Cir. 1998)).

For the temporal route, there naturally must exist "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501. Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). Moreover, "'[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

But, as indicated, temporal proximity is not the sole avenue to establish causation. *CSRA*, 12 F.4th at 417. Rather, temporal proximity is one of two paths to show causation. As noted, the other path contemplates "the existence of facts indicative of an adverse action "'because of the protected activity.'" *Roberts*, 998 F.3d at 123 (citation omitted).

### 3. Analysis

Plaintiff alleges that Chief Harp filed an internal complaint against her on May 24, 2018, accusing Tynes of making a false statement in plaintiff's internal complaint of May 21, 2018. ECF

9, ¶ 16.  Harp also referenced plaintiff's unsuccessful April 2016 Charge.  *Id.* ¶¶ 15-18. Harp stated, in part: "Paramedic Tynes has made false, unsubstantiated allegations about me in the past and because those false allegations were dismissed, she is manufacturing additional false accusations." ECF 16-7 at 4. Plaintiff also avers that she was denied a promotion in retaliation for her prior protected activities. ECF 9, ¶¶ 76-77. Further, Tynes alleges that, in retaliation, she was subjected to excessive scrutiny when returning from medical leave, was denied catastrophic leave, and was not provided with adequate time to provide additional medical information. *Id.* ¶¶ 78-81. She also avers that her termination was an act of retaliation. *Id.* ¶ 81.[19]

The City argues that "any reference[s]" in the Amended Complaint as to the 2016 EEOC action are time-barred and must be dismissed. ECF 15 at 3. In its view, only the allegations as to the 2018 Charge, as amended, are properly before the Court.  *Id.* at 5.  Moreover, the City contends that there is no causal link between plaintiff's protected activity in 2016 or 2018 and the adverse employment event in 2021. *Id.* at 8-10.

The City also avers that Tynes failed to exhaust her administrative remedies with regard to the allegations in ECF 9, ¶¶ 9-18, 20-25, 28, 33, 36, 38-53, 55-59, 64-67, 69, and 71-73, as they were not included in Tynes's 2018 Charge. ECF 15 at 5-6. Therefore, defendant urges dismissal of these allegations, asserting that the Court lacks subject matter jurisdiction. *Id.* at 5.

Further, the City argues that dismissal is appropriate because plaintiff seeks to hold defendant accountable for the actions of medical providers over whom defendant had no control. *Id.* at 7.  Defendant explains that it does "not employ, manage or supervise PSI staff or personnel." *Id.* at 7 n. 1. Therefore, defendant argues that it is "not legally responsible for injuries or damages

---

[19] In the Amended Complaint, plaintiff states that the City "retaliated against Plaintiff when it," but plaintiff does not complete the sentence. ECF 9, ¶ 82.

caused to" Tynes by PSI staff or personnel. *Id.* at 7. And, the City notes that "[b]ecause Dr. Im, Dr. Lee, Nurse Practitioner Gercke, and PSI are not parties to this lawsuit and there is no evidence to suggest liability on the part of Defendant," the allegations concerning plaintiff's physician or PSI in ECF 9, ¶¶ 38-44, 48, 50-52, 58 and 67-70 of the Amended Complaint should be dismissed. ECF 15 at 7.

In the Opposition, plaintiff asserts that she merely included "some of the recurring, persistent, and patterned behavior that constituted the basis for her claims." ECF 16 at 12. And, plaintiff claims that the events pertinent to the 2018 Charge "naturally flow from the initial adverse action by Harp . . . ." *Id.* at 12.

Plaintiff also argues that even though there is a significant time lapse between Tynes's protected activities and the adverse employment actions, the facts as alleged support a plausible inference of retaliatory action. *Id.* at 8-10. And, plaintiff indicates that any allegations regarding the medical providers "are necessary and relevant" to plaintiff's claims, as they provide important "context." *Id.* at 18. Moreover, plaintiff claims that there is an agency relationship between the defendant and PSI. *Id.* at 19.

The City appears to complain that plaintiff's retaliation claim is untimely or defective, because it is based on the 2016 Charge. However, it is clear that Count I asserts retaliation only as to the 2018 Charge.

To be sure, the suit contains many factual allegations as to the 2016 Charge. But, from plaintiff's perspective, the allegations provide necessary context and background for the 2018 Charge. At this juncture, I need not rule on what evidence from 2016, if any, may be admissible at trial. The City's contention that the suit includes too much by way of background certainly does not warrant dismissal of the claim.

As for the City's exhaustion challenge with respect to the 2018 Charge, it, too, lacks merit. The law does not require a pro se, aggrieved person to include every conceivable fact when filing a charge of discrimination.  Indeed, "because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citation omitted).

Further, the City is plainly wrong in asserting that a failure to exhaust is jurisdictional.  As the Fourth Circuit recently observed, "[a]lthough exhaustion is imperative, it is not jurisdictional." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022) (quoting *Davis*, 139 S. Ct. at 1850–51).

If asserted in a timely fashion, an exhaustion objection may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019). But, I decline to dismiss paragraphs 9-18, 20-25, 28, 33, 36, 38-53, 55-59, 64-67, 69, and 71-73 of ECF 9 at this juncture.

With respect to PSI, plaintiff argues that allegations as to PSI "provide relevant context for her initial temporary removal from duty" in September 2021 that ultimately led to her termination. ECF 16 at 18. Indeed, plaintiff failed the Return to Duty Evaluation, citing stress caused by the FCE ordered by PSI. ECF 9, ¶¶ 47, 48. Defendant apparently relied on PSI's reports in deciding to discharge Tynes, notwithstanding Dr. Im's finding on September 3, 2021, that plaintiff was able to return to work. *Id.* ¶¶ 57, 59, 60. *See* ECF 16 at 21.  Indeed, defendant terminated Tynes on September 8, 2021, and defendant's HR representative indicated that Tynes's "job would be restored if she attended the PSI evaluation on September 15, 2021." ECF 9, ¶ 66.  Yet, the evaluation was cancelled. *Id.* ¶¶ 69, 70.

Plaintiff also asserts that PSI was subject to defendant's control.  ECF 16 at 21.  She alleges that "any authority over the Plaintiff by PSI was explicitly authorized by the Defendant." ECF 16 at 20. The City notes that "City employees report to PSI whenever they are going on or off-duty to be examined by a PSI physician." ECF 15 at 7 n. 1. In the Reply, defendant does not respond to plaintiff's assertion that defendant is responsible for PSI's conduct under a theory of agency.  ECF 19 at 19-21.

The matter of agency generally presents a question of fact. *See Famous Knitwear Corp. v. Drug Fair, Inc.*, 493 F.2d 251, 253 (4th Cir. 1974) ("We believe that the creation, duration, and scope of an agency relationship and, specifically, the question of the reasonableness of a third party's reliance on a principal's manifestations of the apparent authority of his agent are essentially questions of fact.") (internal citation omitted). The issue cannot be resolved at this juncture.

As to the sufficiency of the retaliation claim, there is no serious dispute that Tynes engaged in protected activity in regard to her 2018 Charge.  ECF 9, ¶¶ 17, 37, 73.  She also engaged in protected activity when she filed her 2016 Charge. *Id.* ¶ 8. Indeed, plaintiff claims the 2016 Charge led Harp to file an internal complaint against her in 2018.  *Id.* ¶ 16. As indicated, "[p]rotected activity" consists of "oppos[ing] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3. Courts take an "expansive view of what constitutes oppositional conduct." *DeMasters*, 796 F.3d at 417.

Moreover, Tynes has alleged that, after engaging in the protected activity, she was subjected to materially adverse actions. As noted, a "materially adverse" action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. Defendant's termination of Tynes's employment is certainly a materially adverse action. *Strothers*, 895 F.3d at 328 (finding that it is "patently obvious" that

36

termination is a materially adverse action). Further, defendant's decision not to promote Tynes or select her for a position could amount to a materially adverse action. *Boone*, 178 F.3d at 255. Similarly, Tynes's unpaid suspension that resulted from the Harp Complaint may constitute a materially adverse action, even though Tynes was later compensated by the BFD for that suspension. *Lowery v. CSX Transportation, Inc.*, 690 F. App'x 98, 100 (4th Cir. 2017). Tynes has adequately alleged that she suffered a materially adverse action.

The critical issue here is one of causation. A plaintiff must allege a causal connection between protected activity and a materially adverse action. To do so, defendant contends that "there must be a "close temporal relationship between the protected activity and the adverse action sufficient to show a causal nexus." ECF 15 at 10 (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)). Of note, the plaintiff in *Yashenko* claimed he was retaliated against for taking protected leave under the Family and Medical Leave Act ("FMLA"). *Id.* at 550. And, FMLA retaliation claims "are analogous to those derived under Title VII." *Id.* at 551.

*Yashenko* indicates that a close temporal relationship "'certainly satisfies the less onerous burden of making a prima facie case of causality.'" *Id.* (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)). But, temporal proximity is not the only way in which to establish causation.

The Fourth Circuit has said that, when "'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Tutt v. Wormuth*, 2021 WL 4076729, at *2 (4th Cir. Sep. 8, 2021) (per curiam) (citation and internal quotation marks omitted). *Tutt* involved a gap of fifteen or sixteen months between the protected activity and the adverse action. And, the Court said in

the context of a motion to dismiss that "additional facts, including [a] supervisors' repeated comments regarding [plaintiff's] protected activity and events occurring prior to the adverse action . . . —when taken as true as they must be at this stage—are sufficient to plausibly bridge the gap between [plaintiff's] protected activity and [the adverse action]." *See also Roberts*, 998 F.3d at 123; *Johnson*, 839 F. App'x at 783-84.

*Templeton v. First Tennessee Bank, N.A.*, 424 F. App'x. 249, 251 (4th Cir. 2011) (per curiam), is also instructive. There, the Fourth Circuit concluded that, at the motion to dismiss stage, the district court erred in dismissing a retaliation claim on the ground that "too much time had elapsed between [the plaintiff's] harassment complaint and Defendants' refusal to rehire her." *Id.* at 251. The Court said, *id.*: "Because [plaintiff] resigned her employment shortly after she complained of harassment, [she] was retaliated against, if at all, upon the employer's first opportunity to do so, *i.e.*, when [plaintiff] expressed her interest in being rehired *approximately two years after her resignation*." (Emphasis added).

Defendant mischaracterizes the time frame at issue by stating there was approximately two or four years between Tynes's 2016 Charge and the alleged retaliatory activity. ECF 15 at 9. Tynes's 2016 Charge was dismissed by the MCCR on November 29, 2016 (ECF 11-6), and by the EEOC on February 6, 2017 (ECF 11-4 at 2). However, in March 2017, a few weeks after the EEOC rejected Tynes's 2016 Charge, Tynes began a lengthy medical leave that extended for more than one year—until April 30, 2018. ECF 11-9 at 2. And, on May 24, 2018, within one month of Tynes's return to active duty, she claims that she was subjected to retaliation. ECF 11-7; ECF 9, ¶ 16.

In particular, plaintiff alleges that Chief Harp, the same individual who was named in Tynes's 2016 Charge, filed a formal complaint against Tynes in May 2018, accusing Tynes of

making false statements, and referencing false statements that Tynes allegedly made in the 2016 Charge. *See* ECF 9, ¶ 16; ECF 16-7 at 4. According to Tynes, Harp's complaint in 2018 was in retaliation for Tynes's 2016 Charge. ECF 9, ¶ 18. Defendant's decision not to promote Tynes in 2020 may have been the BFD's first opportunity to retaliate in response to the 2018 Charge. Similarly, defendant's termination of Tynes may have been its first opportunity to retaliate in regard to Tynes's First Amended Charge.

In my view, Tynes has "alleged facts supporting a plausible inference" that she was subjected to retaliation because of her protected activity in 2018. *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022). Accordingly, I shall deny the Motion as to Tynes's retaliation claim.

## B.   Disability—The ADA (Count II)

### 1.   The ADA Generally

The ADA, 42 U.S.C. §§ 12101 et seq., was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).[20]

---

[20] The ADA contains five titles. Title IV pertains to Telecommunications and Title V contains Miscellaneous Provisions.

Of relevance here, Title I of the ADA concerns employment. It prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B). And, the ADA bars the discharge of a qualified employee because she is disabled. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).

A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)). Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . . working" and "reproductive functions." 42 U.S.C. § 12102(2)(A)-(B).[21]

An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," is considered to have a disability. 42 U.S.C. § 12102(1)(B)-(C). A plaintiff has a "record of disability" if she can show that she "'has a history of, or has been misclassified as

---

[21] In the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, Congress considerably broadened the definition of disability, as well as the standard for "substantially limits." *See Miller v. Md. Dep't of Natural Resources*, 813 F. App'x 869, 875 (4th Cir. 2020) (Mem.); *Summers*, 740 F.3d at 329.

having, a mental or physical impairment that substantially limits one or more major life activities.'" *Foore v. Richmond*, 6 Fed. App'x 148, 153 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)(1)). This is "'a question of law for the court.'" *Coghill v. Bd. of Educ. of Prince George's Cty.*, GJH-14-2767, 2017 WL 1049470, at *5 (D. Md. Mar. 17, 2017) (citation omitted), *aff'd*, 703 F. App'x 211 (4th Cir. 2017). To resolve this question, the court must make "an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001).

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. § 12112(b)(5)(A); *see Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4h Cir. 2013); *Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 F. App'x 314, 311 (4th Cir. 2011). Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B). And, the ADA bars the discharge of a qualified employee because she is disabled. *Summers*, 740 F.3d at 328.  The "date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'" *E.E.O.C. v. Stowe-Pharr Mills*, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

"A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . . to perform the essential functions of [a] position,' 29 C.F.R. § 1630.2(o)(1)(ii); or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by . . . . other similarly situated employees without disabilities,' *id*. §

1630.2(o)(1)(iii)." *Hamel v. Bd. of Educ. of Harford Cty.*, JKB-16-2876, 2018 WL 1453335, at
*10 (D. Md. Mar. 23, 2018).

A reasonable accommodation "may include . . . . job restructuring, part-time or modified
work schedules, reassignment to a vacant position, acquisition or modification of equipment or
devices, appropriate adjustment or modifications of examinations, training materials or policies,
the provision of qualified readers or interpreters, and other similar accommodations for individuals
with disabilities." 42 U.S.C. § 12111(9). A reasonable accommodation may also include accrued
paid leave or unpaid leave. *See* 29 C.F.R. pt. 1630 app. § 1630.2(o) ("[O]ther accommodations
could include . . . . permitting the use of accrued paid leave or providing additional unpaid leave
for necessary treatment[.]"). However, an accommodation is not reasonable as a matter of law "if
it either imposes undue financial and administrative burdens on a grantee, or requires a
fundamental alteration in the nature of [the] program." *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480
U.S. 273, 288 (1987) (internal citations omitted); s*ee Reyazuddin v. Montgomery Cty.*, 789 F.3d
407, 414 (4th Cir. 2015); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir.
2012).

"Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the
ADA incorporates that statute's enforcement procedures, *id*. § 12117(a), including the requirement
that a plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC before
pursuing a suit in federal court, *see id*. § 2000e–5(b), (f)(1)." *Sydnor*, 681 F.3d at 593. The
administrative claims process is "an integral part" of the enforcement scheme that Congress set
out in Title VII. *Chacko*, 429 F.3d at 510. By incorporation, it is also integral to the ADA. *See
Sydnor*, 681 F.3d at 593. "Allowing [the EEOC] first crack at these cases respects Congress's intent
'to use administrative conciliation as the primary means of handling claims, thereby encouraging

42

quicker, less formal, and less expensive resolution of disputes.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

Similarly, the precedent discussed earlier with regard to Title VII is generally applicable in the context of the ADA. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) ("Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework.") (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 & n.3 (2003)); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases"); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391-92 (4th Cir. 2001) (applying the Title VII framework). Thus, avenues of proof apply to a disability discrimination claim. *See also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-70 (4th Cir. 1999) (holding that Title VII's mixed-motive causation requirement, and not the Rehabilitation Act's "solely because of" causation requirement, applies to the ADA).

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs*, 780 F.3d at 572 (quoting *Stowe–Pharr Mills, Inc.*, 216 F.3d at 377).

To establish a prima facie case of wrongful discharge under the ADA, the plaintiff is generally required to allege that (1) the employee is a qualified individual with a disability; (2) the employee was discharged; (3) at the time of discharge, the employee was performing the job at a level that met the employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Coursey v. Univ. of*

*Md. E. Shore*, 577 F. App'x 167, 174 (4th Cir. 2014) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)); *see also Summers*, 740 F.3d at 328; *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 947 (4th Cir. 2013) (per curiam); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995). "The plaintiff may establish the fourth element of the prima facie case 'either by showing that [comparably qualified] persons outside the protected class were retained in the same position or by producing some other evidence indicating that the employer did not treat [disability] neutrally.'" *Munoz v. Baltimore Cty., Md.*, RDB-11-02693, 2012 WL 3038602, at *6 (D. Md. July 25, 2012).

To state a prima facie claim of failure to accommodate, a plaintiff must allege: (1) the employee was an individual with a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations. Rhoads, 257 F.3d at 387 n.11 (4th Cir. 2001); *see also Stephenson v. Pfizer*, 641 F. App'x 214, 219 (4th Cir. 2016) (per curiam); *Jacobs*, 780 F.3d 579; *Wilson*, 717 F.3d at 345.

### 2. Analysis

Count II asserts that plaintiff was subjected to discrimination on the basis of disability. Plaintiff alleges that defendant did not provide her with a reasonable opportunity to request accommodations. ECF 9, ¶¶ 84, 86. Plaintiff also avers that she was terminated due to defendant's conclusion that her disability prevented her from performing "essential job functions," without affording her the opportunity to establish that she was not disabled. *Id.* ¶ 86. Plaintiff also alleges that defendant's choice to place her on administrative leave to pursue reasonable accommodations constitutes an adverse employment decision. *Id.* ¶ 87.

The City contends that the Right to Sue expired on June 19, 2022. ECF 15 at 11. Defendant argues that plaintiff's ADA Claim in the Amended Complaint of July 26, 2022, is barred by limitations, because the original Complaint, filed on June 14, 2022, did not include a claim for discrimination under the ADA. *Id.*[22] In the Opposition, plaintiff argues that the original Complaint clearly indicates "allegations of discrimination on the basis of disability, or perceived disability." ECF 16 at 34. Defendant's Reply is silent as to the timeliness of plaintiff's ADA claim. ECF 19.

Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Additionally, Fourth Circuit "policy . . . . liberally allow[s] amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Of course, there is no basis to allow amendment to bring a claim barred by limitations. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of claim justifies denial of leave to amend). Therefore, when a party seeks leave to amend to bring an untimely claim, the Court considers whether the claim is "saved by the relation-back authorized by Rule 15(c)." *Goodman*, 494 F.3d at 466. If an amended complaint relates back, it shares "the filing date of the original complaint." *Id*. Of relevance here, when considering the relation back doctrine in the context of a motion to dismiss, the court "must accept the truth of [a plaintiff's] plausible allegations and draw all reasonable inferences in his favor." *Dreher v. Maryland*, GLR-17-3832, 2019 WL 528192, at *7 (D. Md. Feb. 11, 2019).

---

[22] Defendant also moves for summary judgment on the basis that "Plaintiff cannot establish a prima facie case of discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §703 et seq." ECF 11 ¶ 5. Specifically, defendant argues that plaintiff has not engaged in the "interactive process." ECF 15 at 15-16. However, plaintiff's disability discrimination claim is founded on the ADA. *See* ECF 9, ¶ 84; *see also* ECF 16 at 16. And, as discussed, summary judgment is not appropriate at this juncture.

Rule 15(c)(1)(A) states that an amendment may relate back if "the law that provides the applicable statute of limitations allows relation back." Rule 15(c)(1)(C) provides that an amendment may relate back under certain circumstances when, instead of bringing a new claim or defense, "the amendment changes the party or the naming of the party against whom a claim is asserted." Neither is the case here.

Under Rule 15(c)(1)(B), "an amendment to a pleading relates back to the date of the original pleading when . . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). To relate back, "there must be a factual nexus between the amendment and the original complaint." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983), *aff'd* 468 U.S. 42 (1984). That is, "the amended claims and the original claims [must] share a core of operative facts." Steven S. Gensler, *Federal Rules of Civil Procedure: Rules & Commentary ("Rules & Commentary")* Rule 15 (2022). If "there is some factual nexus, an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan*, 710 F.2d at 163; *see Bradley v. Veterinary Orthopedic Sports Med. Grp.*, DKC-19-2662, 2022 WL 703916, at *8 (D. Md. Mar. 9, 2022).

Thus, "relation back is proper when the amended complaint amplifies the existing allegations or makes the existing allegations more definite and precise" by "present[ing] additional facts." Gensler, *Rules & Commentary* Rule 15. Relation back also is proper even if the amendment presents a "new claim [that] involve[s] different sources of proof" or "new legal theories," as long as "the core facts are the same." *Id*. In contrast, relation back is not proper if the amendment presents "new claims [that] arise from an entirely different event or set of facts." *Id*.

46

"Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served." *Goodman*, 494 F.3d at 468. Therefore, the "fundamental question" in deciding whether a claim relates back under Rule 15(c)(1)(B) "is whether the original complaint served the notice-giving purpose of the limitations period by providing fair notice—within the applicable limitations period—of the basis for liability that was added in the amended complaint." Gensler, *Rules & Commentary* Rule 15. "The rationale is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

The Fourth Circuit's decision in *Grattan*, 710 F.2d 160, provides guidance. There, the Fourth Circuit reversed a district court decision disallowing the addition of new claims that the lower court found were barred by the statute of limitations. The plaintiffs were former college employees who brought claims against a university, alleging that their termination was "arbitrary, capricious, without basis in fact or law, illegal and invalid under the Maryland and Federal constitutions." *Id.* at 161. They did not specifically allege race or sex discrimination in their original complaint, even though they had "filed . . . . claims of race and sex discrimination with the Equal Employment Opportunity Commission . . . . immediately upon learning of their pending termination." *Id.* Four years after filing their original complaint, plaintiffs filed an amended complaint adding race and sex discrimination claims under 42 U.S.C. §§ 1981, 1983, and 1985. *Grattan*, 710 F.2d at 161–62.

The district court found that the claims were barred by limitations. *Id.* at 162. On appeal, the Fourth Circuit concluded the discrimination claims related back to the original complaint. *Id.* at 163. It reasoned that "[t]here [was] a factual nexus between the discrimination claims . . . . and

[the original] complaint of arbitrary dismissal" because "[b]oth concern[ed] the events leading up to the[ ] termination . . . . and in both the termination was the ultimate wrong of which they complained." *Id*.

In this case, plaintiff did not mention a claim under the ADA in her original Complaint. But, there is a clear factual nexus between the facts alleged in the original Complaint and Count II of the Amended Complaint. Specifically, the broad facts underlying the claims brought in the original and amended complaints are the same, in that they revolve around Tynes's discharge due to a medical reason.

For example, plaintiff stated in the Complaint: "The Department and PSI contend that Plaintiff's removal from duty and subsequent discharge were for other medical reasons that they have refused to disclose to either the Plaintiff or her doctors." ECF 9, ¶ 64; *see also id.* ¶¶ 44, 55, 59, 60, 74. Moreover, the Complaint included an allegation about a discussion with HR staff as to ADA resources. *Id.* ¶ 69. And, of significance, Tynes clearly checked the box in her Second Amended Charge indicating that she was discriminated against on the basis of disability. ECF 11-8 at 3. Therefore, defendant has had notice of Tynes's ADA discrimination claim.

As Judge Bennett previously noted, the "overall purpose of the relation back doctrine [is] to provide a defendant with adequate notice of the claims against him." *Bhambhani v. Innovative Health Solutions, Inc.*, RDB-19-0355, 2021 WL 3367680, at *8 (D. Md. Aug. 3, 2021).  The City had that notice.

The Amended Complaint relates back because the new factual allegations elaborate on the same set of facts and alleged wrong as to plaintiff's medical condition, as alleged in the original Complaint. *See Robinson v. Pytlewski*, DLB-19-1025, 2022 WL 2359359, at *13 (D. Md. Jun. 30,

2022). Therefore, the ADA claim is not time-barred. Accordingly, I shall deny defendant's Motion as to Count II of the Amended Complaint.

### IV.  Conclusion

For the reasons stated above, I shall deny the Motion.

An Order follows, consistent with this Memorandum Opinion.

Date:   March 28, 2023

_____/s/_____

Ellen L. Hollander
United States District Judge