IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NICOLE TYNES, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. MJM-22-1452 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Nicole Tynes ("Plaintiff") filed this civil action against the Mayor and City Council of Baltimore ("City" or "Defendant") alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). This matter is before the Court on the City's Motion for Summary Judgment. ECF No. 50. The Motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion.

**I.      BACKGROUND**

Plaintiff began working for the Baltimore City Fire Department ("Fire Department") as a paramedic on August 20, 2014. ECF No. 9, ¶¶ 6–7. In March 2016, Plaintiff made a formal complaint of discrimination to the Fire Department's EEO office. ECF No. 60-4. In April 2016, Plaintiff filed a charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") and the Equal Employment Opportunity Commission ("EEOC") (the "2016 Charge").

1

ECF No. 50-4. The 2016 Charge was filed against Battalion Chief Theresa Harp and alleged discrimination and retaliation based on Plaintiff's race. *Id.* On November 29, 2016, the MCCR found "no probable cause" as to Plaintiff's claims of race discrimination and retaliation, ECF No. 50-6 at 5–6, which was adopted by the EEOC on February 6, 2017, ECF No. 11-4. The EEOC issued a "Dismissal and Notice of Rights" informing Plaintiff that she must initiate a lawsuit within 90 days, which she failed to do.

The Fire Department transferred Plaintiff to different units on at least 12 occasions in the two years following her initial complaint. *See* ECF No. 60-6. On October 18, 2016, Plaintiff suffered a work-related injury, and she eventually returned to regular duty on February 13, 2017. *Id.* at 13–14. On March 3, 2017, Plaintiff sustained an injury to her right forearm/wrist and was placed on light duty by the Mercy Hospital Public Safety Infirmary ("PSI") on March 6, 2017. ECF No. 50-7. On September 5, 2017, Plaintiff passed the Functional Capacity Examination ("FCE"), and she was returned to regular duty on September 12, 2017. *Id.* at 17.

PSI placed Plaintiff back off-duty when she returned to PSI with a reoccurrence of her previous injury on September 13, 2017. ECF No. 50-9 at 2. On April 26, 2018, Plaintiff completed the FCE, *id.* at 38, and she was placed back on regular duty on April 30, 2018, *id.* at 40. When Plaintiff was placed back on duty, she had been on leave for more than six months. In accordance with Fire Department policy, she was required to complete a Return to Duty ("RTD") skills evaluation. ECF No. 50-10. On May 1, 2018, Plaintiff reported to the Fire Department's Pimlico Public Safety Training Facility and successfully completed the RTD. Plaintiff returned to work on May 14. On May 15, Plaintiff was assigned to work with Paramedic Laura Woolfson. ECF No. 60-5 at 25. Plaintiff alleges that Paramedic Woolfson subjected her to derogatory remarks and

hostility, and interfered with her ability to complete her job duties. ECF No. 60 at 4, ECF No. 60-9.

On May 21, 2018, Plaintiff filed a Special Report requesting certain trainings and adding a complaint that Paramedic Woolfson created a hostile work environment. Exhibit 8 to Defendant's Exhibit 10. In the Special Report, Plaintiff stated that she was sending a certified copy to the Chief of the Fire Department, Niles Ford. *Id.* The following day, Plaintiff filed an internal complaint against Paramedic Woolfson, stating that Chief Harp was aware of the situation and that Plaintiff felt trapped between Chief Harp and Paramedic Woolfson. Exhibit 9 to Defendant's Exhibit 10. Chief Harp's superior, Chief Fletcher, told Chief Harp that Plaintiff's May 21, 2018, Special Report falsely reported her training and that she should file a complaint. *Id.*

On May 24, 2018, Chief Harp filed a complaint with the Fire Department stating that Plaintiff had made "false statements" in her second Special Report and that Plaintiff had received extensive training in the requested areas after the first Special Report. Exhibit 13 to Defendant's Exhibit 10; ECF No. 60-11 (clearer version of complaint). Chief Harp also referenced Plaintiff's 2016 Charge, stating that Plaintiff's May 21, 2018, complaint was in "retaliation for her previous complaint being dismissed and exposed as false." ECF No. 60-11.

On July 6, 2018, Plaintiff filed a charge of discrimination against the Fire Department with the Baltimore City Community Relations Committee ("2018 Charge") alleging that Chief Harp's May 24, 2018, complaint was in retaliation for Plaintiff filing her 2016 Charge. ECF No. 60-13. The 2018 Charge was filed with the EEOC. ECF No. 50-1 at 6. On July 16, 2018, Plaintiff was reassigned to a different shift where Plaintiff claims she suffered harassment and disparate treatment. ECF No. 60 at 5–6.

On January 23, 2019, the Fire Department had an internal disciplinary hearing on Chief Harp's complaint. ECF No. 50-12 at 51. Following the disciplinary hearing, on February 26, 2019, Plaintiff received a 17-day work suspension without pay and was assessed 11 points on her disciplinary history. *Id.* at 52. Plaintiff subsequently filed a grievance with the Baltimore City Office of the Labor Commissioner. The matter settled on February 5, 2020, and Plaintiff was reimbursed the 17 days of suspension, and the points were removed from her file. ECF No. 50-13.

On October 29, 2020, Plaintiff amended her 2018 Charge, adding retaliation allegations regarding the selection process for a Fire Inspector I position to which she had applied. ECF No. 60-19.

On January 12, 2021, PSI placed Plaintiff off-duty through August 31, 2021, due to a non-line-of-duty surgery. ECF No. 50-17. Plaintiff experienced post-op complications. *Id.* at 13. After periodic check-ins at the PSI, Plaintiff's doctor advised her that she could return to her duties on July 29, 2021. *Id.* at 32. An FCE was scheduled for August 16, 2021, which Plaintiff successfully completed. *Id.* After her evaluation on August 31, 2021, Plaintiff was placed back on full duty. ECF No. 50-17 at 39.

Because she was out for more than six months, Plaintiff was required to take an RTD exam. ECF No. 50-10. Plaintiff was unable to pass the RTD, and she was emotional and appeared distraught. ECF No. 50-1 at 11. The evaluator explained that she did not feel Plaintiff would be able to complete the RTD process because of her emotional state. *Id.* at 11–12. Plaintiff was sent back to PSI to be evaluated on September 1, 2021, and was placed back off duty. ECF No. 50-17 at 41–42. Plaintiff believed this decision was based on the instruction of Chief Clark. ECF No. 60 at 10. As a result of being placed back off-duty by PSI, Plaintiff was sent an updated Expiration of Medical ("EOM") Notification dated September 2, 2021. ECF No. 51-4. Plaintiff was informed

that her EOM cut-off date was September 8, 2021.[1] *Id.* PSI scheduled Plaintiff for a follow-up appointment on September 15, 2021, after her EOM. ECF No. 50-17 at 42.

On September 3, 2021, Plaintiff filed a Special Report requesting the use of accrued leave for catastrophic leave to extend her EOM date past her PSI appointment. ECF No. 51-8. Plaintiff claims she attached to the Special Report her doctor's clearance to return to duty. ECF No. 60-29. Article 31 of the Memorandum of Understanding between the Baltimore Fire Fighters Local 734 (the "Union") and the City of Baltimore states that catastrophic leave is available when complete medical recovery is anticipated but requires more time. ECF No. 51-5 at 41. In order to receive catastrophic leave, an individual must submit "[t]he reasonable prognosis of complete recovery within twelve weeks . . . [which] must be certified by a physician licensed in the State of Maryland." *Id.* Plaintiff's request was denied because her submission did not meet these requirements. ECF No. 51-8.

Plaintiff was terminated after failing to return to work on September 8, 2021, the EOM date. ECF No. 51-4; ECF No. 51-6. On October 4, 2021, Plaintiff amended the 2018 Charge a second time, alleging that she was terminated in retaliation for her prior protected activity. ECF No. 60-31.

On December 10, 2021, the Baltimore Community Relations Commission issued a finding of no probable cause on Plaintiff's 2018 Charge. ECF No. 51-12 at 13. Based on the findings by the Baltimore Community Relations Commission, on March 18, 2022, the EEOC dismissed the 2018 Charge and issued a notice of Plaintiff's right to sue. ECF No. 51-13. Plaintiff filed the instant

---

[1] EOM is governed by the Baltimore Fire Fighters Local 734 (the "Union"). *See* ECF Nos. 51-5 at 41. Under the Union's Memorandum of Understanding, individuals are allowed six months of leave due to non-line of duty injuries/sick leave. *Id.*

action against the City within the mandatory 90-day period following the EEOC's right-to-sue notice.

Plaintiff's Amended Complaint alleges two counts: retaliation and disability discrimination. ECF No. 9. Defendant filed a motion to dismiss, or in the alternative, for summary judgment, ECF No. 11, and Judge Hollander, treating it as a motion to dismiss, denied the motion, ECF No. 23. The case was reassigned to the undersigned on November 15, 2023.

Defendant filed a motion for summary judgment on April 5, 2024. ECF No. 50. In her response, Plaintiff does not dispute dismissal of her disability discrimination count but opposes summary judgment on her retaliation count. ECF No. 60. Defendants filed a reply in support of its motion. ECF No. 63.

## II.    STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable

inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

## III.   DISCUSSION

Plaintiff does not contest the dismissal of Count II of her Amended Complaint regarding violations of the Americans with Disabilities Act. ECF No. 60 at 2. Accordingly, Defendant shall be granted summary judgment on Count II.

Plaintiff's remaining retaliation claim is based on her termination from the Fire Department after she failed to return to work on September 8, 2021.[2]

### A.  Title VII

Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (anti-discrimination provision); 42 U.S.C. § 2000e-3(a) (anti-retaliation provision). Specifically, Title VII's anti-retaliation provision makes it unlawful for an employer to

---

[2] In her Amended Complaint, Plaintiff also alleges that the City retaliated against her by denying her promotion to which she applied, subjecting her to excessive scrutiny upon return from medical leave, requiring additional paperwork for her to return to work that was not required of other similarly situated co-workers, and failing to approve her request for catastrophic leave. ECF No. 9, ¶¶ 76–80. However, none of these claims are pursued in her opposition to the City's motion for summary judgment. *See* ECF No. 60.

discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

The plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).

Under *McDonnell-Douglas*, the precise formulation of the required prima facie showing will vary in "differing factual situations." 411 U.S. at 802 n.13. "To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against h[er] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).

If a plaintiff establishes a prima facie case, a presumption of illegal retaliation arises, and the burden shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported non-

retaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Foster*, 787 F.3d at 250 (citation omitted). Despite this burden-shifting framework, the employee "bears the ultimate burden of proving that she has been the victim of retaliation[.]" *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citation omitted).

At the summary judgment stage, if an employer has proffered evidence of a legitimate reason for its adverse action, the Court may assume, without deciding, that the plaintiff established a prima facie case. *Bagwell v. Downtown Parternship of Baltimore, Inc.*, Civ. No. ELH-18-1786, 2020 WL 247293, at *7 n.2 (D. Md. Jan. 15, 2020) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–20 (4th Cir. 2005); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008); *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736–37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002)).

**B. Plaintiff cannot establish pretext.**

Assuming that Plaintiff can establish a prima facie case of retaliation, Defendant has produced a legitimate, non-retaliatory reason for terminating Plaintiff: that her medical leave expired, and she did not return to work.[3] ECF No. 50-1 at 13–16; ECF No. 51-4; ECF No. 51-6. To overcome summary judgment on her retaliation claim, Plaintiff must present evidence that Defendant's proffered reason was not the true reason for the employment termination, *Foster*, 787 F.3d at 250, and that Plaintiff "has been the victim of retaliation[,]" *Laughlin*, 149 F.3d at 258.

---

[3] While Plaintiff argues that her job reassignments and disciplinary memoranda are adverse actions, ECF No. 60 at 15–16, these actions are not properly before this Court because they are not alleged in the Amended Complaint as grounds for Plaintiff's retaliation claim. *See* ECF No. 9, ¶¶ 76–87.

9

Plaintiff's first argument that Defendant's proffered reason for termination is pretextual is based upon her allegedly having been improperly disciplined for making false statements in May 2018. ECF 60 at 25–26. This discipline occurred more than a year before Plaintiff's termination and does not relate at all to her failure to return to work after the expiration of her medical leave and cannot reasonably call it into question Defendant's proffered non-retaliatory reason for termination.

Plaintiff's second argument for a finding of pretext is that, after she was medically cleared to work on August 31, 2021, she was placed back off-duty the very next day. ECF No. 60 at 26–28. But there is no genuine dispute that the decisions regarding Plaintiff's placement on-duty and return to off-duty status were made by medical personnel at PSI and not by the Fire Department. Plaintiff relies on a note by a PSI nurse practitioner following a discussion with Chief Clark to assert that Chief Clark decided that Plaintiff should be placed off-duty on September 1. ECF No. 60 at 27–28; ECF Nos. 60-25 & 60-26. But the record evidence establishes that PSI made this decision, without input from the Fire Department. As a general matter, PSI decides whether and when an employee is taken off-duty for medical reasons and placed back on-duty. *See* ECF No. 51-2; ECF No. 63-3. At his deposition, Chief Clark testified that physicians at PSI determined whether Fire Department employees were taken out of work for medical reasons or returned to regular duty. ECF No. 63-3 at 3–4, 13. Specifically, Chief Clark testified, Dr. Hayat called to advise him that PSI was placing Plaintiff back off-duty on September 1, 2021. *Id.* at 17, 19. Plaintiff offers only speculation, and no competent evidence, that Chief Clark decided to place Plaintiff off-duty.

Plaintiff's final argument for a finding of pretext is that the Fire Department declined to grant Plaintiff's request for catastrophic leave that would have extended her leave period beyond

her EOM date. ECF No. 60 at 28–29. But there is no genuine dispute that Plaintiff did not meet the requirements for catastrophic leave reflected in the MOU between Defendant and the Union. Specifically, Article 31 of the MOU provides that an employee requesting catastrophic leave must submit "[t]he reasonable prognosis of complete recovery within twelve weeks" as certified by a physician. ECF No. 51-5 at 41. Plaintiff's request was denied because her submission did not meet this requirement. ECF No. 51-8. Chief Clark testified in his deposition that Chief Ford denied the request for that reason: Plaintiff did not meet the MOU qualifications. ECF No. 63-3 at 6–7.

Because Plaintiff fails to present evidence to suggest that Defendant's proffered reason for terminating her employment was pretextual, summary judgment must be granted in Defendant's favor.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be GRANTED.

A separate Order will follow.

| | |
|---|---|
| 3/31/25 | |
| Date | Matthew J. Maddox<br>United States District Judge |